UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRANDON J. JOHNSON,

                    Plaintiff,                      Case No. 1:23-cv-95

v.                                                  Honorable Phillip J. Green

MARISSA SMITS, et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.66.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  Plaintiff sues Michigan Sex Offender Program (MSOP) Clinicians Marissa Smits and Emily Minnick, MSOP Unit Chief J. Athearn, and Warden Unknown MacCauley.

Plaintiff states that he was convicted of criminal sexual conduct in March of 2011 and was sentenced to 7 to 30 years in the MDOC.  Plaintiff completed MSOP phase I on March 4, 2016, while at Brooks Correctional Facility.  In July of 2019, Plaintiff was informed that he needed to complete MSOP before being considered for parole.  Plaintiff was transferred to IBC and was enrolled in MSOP on August 18, 2020, but MSOP at IBC was closed because of COVID-19 safety protocols on August 27, 2020, and remained so until May 11, 2021.

On May 11, 2021, Plaintiff was assessed by Defendant Smits who "raised his treatment level for phase 2-5 to a 'high'" based on the assertion that Plaintiff minimized his behavior when describing "how his offense transpired," which required Plaintiff to have 12 to 18 months of therapy.  (Compl., ECF No. 1, PageID.4.)  Plaintiff attended every MSOP group and individual session offered between May 10, 2021, and January 10, 2022, and was given credit for 98 hours.  However, Plaintiff was not given credit for the mandated homework sessions, which amounted to 72 hours, nor was Plaintiff given credit for the monthly one-on-one sessions.  Plaintiff received

4

grades of good for 39 of his group sessions and fair for 10 of them.  Plaintiff's homework was graded as satisfactory for 47 assignments and unsatisfactory for 2 of them.  Plaintiff states that he also complied with self-help mandates that were not credited.  On January 10, 2022, Plaintiff "filed a grievance about continuous suspensions [of MSOP, apparently due to COVID-19 outbreaks at the facility,] with no alternate options to progress." (*Id.*; *see* ECF No. 1-5, PageID.23–25 (listing, *inter alia*, dates on which MSOP was cancelled due to COVID-19).)

On February 9, 2022, Plaintiff was interviewed by Defendant Minnick, who informed him that she was aware of two misconducts he received on February 3, 2022, and that she had spoken to inmate Eubanks #671564 regarding the incidents.  Defendant Minnick stated that if Plaintiff did not tell her the truth regarding the incidents, she was going to terminate him from MSOP.  Plaintiff responded that he had received the misconduct for stepping across the threshold of another inmate's cell while passing to the commissary for a haircut and that a few hours later, inmate Such #829555 came to Plaintiff's cell to cut his hair.  Plaintiff stated that Sergeant Ramirez saw him crossing into another prisoner's cell on camera so Plaintiff pleaded guilty and received 5 days' loss of privileges.  (ECF No. 1, PageID.5.)

Plaintiff alleges that Defendant Minnick became hostile and called him a liar, stating that she had heard all about Plaintiff who was a "gang banging drug dealer, running around here fighting and extorting people, I guess you have amnesia people like you don't deserve to be free or in MSOP." (*Id.*)  Plaintiff responded that the allegations were false and that it was unprofessional to use rumors and gossip against

Plaintiff.   Defendant Smits stated that Plaintiff was continuing to minimize his behavior and that Plaintiff was continuing to challenge them. Defendant Minnick agreed.   Defendants Smits and Minnick then terminated Plaintiff from MSOP. Plaintiff protested that it was unjust and would prevent him from receiving the therapy necessary to facilitate his release on parole and asked if he was the only prisoner being terminated from the program.   Defendant Minnick replied yes, and Plaintiff complained that prisoner Eubanks had received the exact same tickets as Plaintiff on February 3, 2022.

Between February 9 and February 15 of 2022, Plaintiff was approached by other MSOP members who stated that they had also received multiple misconducts but had not been terminated from MSOP.  On February 15, 2022, Plaintiff spoke to Defendant Smits and complained that he was being discriminated against because other prisoners with more severe rule infractions had not been terminated from MSOP.   Defendant Smits responded that different decisions are appropriate for different people and that Plaintiff was being terminated for lack of progress and behavioral issues.

On February 23, 2022, Defendant Smits wrote the termination report, which Plaintiff claims contains several false entries that were unsubstantiated.  Plaintiff states that the information was used by the Parole Board.  This information included a statement that in August of 2021, an urban magazine addressed to Plaintiff was rejected because it contained information that was a possible risk factor for hostility toward women and sexual preoccupation.  (*Id.*, PageID.7.)  In addition, the statement

6

indicated that in September of 2021, Defendant Smits reported that Plaintiff had been in an argument with another inmate and that they were about to fight and that in December of 2021, a note was discovered with "Johnson," "200," and a dollar sign written on it. (*Id.*, PageID.8.)  The termination report also indicated that in January of 2022, contraband was found in Plaintiff's room, but Plaintiff states that this is false because the property was "trimmers," which were an allowable purchase.  (*Id.*) Plaintiff also states that he was falsely accused of abusing his position as block representative by being out of his cell when not authorized.  Plaintiff notes that he never received a misconduct related to this alleged behavior.  (*Id.*)

Plaintiff asserts that Defendant Smits had noted in his record that he was struggling to internalize concepts, and that his plan for a business upon his release from prison was unrealistic.  (*Id.*, PageID.8–9.)  Plaintiff claims that Defendant Smits was getting information from a MSOP tutor in exchange for favorable treatment and that Defendant Minnick was receiving daily information from Corrections Officer Cooley with whom she shares a close intimate relationship.  (*Id.*)  Plaintiff states that Defendant Smits entered over seven unsubstantiated claims of misbehavior and minimizing behavior in his MDOC file based solely on rumors and gossip.  (*Id.*) Defendant Smits stated that Plaintiff was terminated from MSOP for lack of progress even though Plaintiff claims that his monthly assessments showed he made progress in six out of eight months.  (*Id.*)

Plaintiff filed a grievance asserting a violation of his due process rights, discrimination, and cruel and unusual punishment which resulted from the egregious abuse of governmental authority by Defendants Smits and Minnick. Plaintiff's grievance was denied by R. Jones, MA, LLP, and Defendant Athearn on February 24, 2022. (*Id.*, PageID.10.) On March 2, 2022, Corrections Officer Cooley (not a party) searched Plaintiff's cell at the direction of Defendant Minnick and confiscated Plaintiff's completed MSOP work. On March 3, 2022, Plaintiff was transferred to the Kinross Correctional Facility (KCF). Plaintiff claims that Defendant MacCauley facilitated this transfer in retaliation for Plaintiff "exercising his right to the prisoner's grievance system." (*Id.*, PageID.13.)

On November 7, 2022, Plaintiff had a parole board interview and Parole Board Member Dr. King read Defendant Smits' comments from the MSOP termination report. Dr. King asked Plaintiff what he had difficulty internalizing in the program. Plaintiff responded that there had been controversy about his use of the word "female" and that Defendant Smits felt it was unrealistic for him to be an entrepreneur. (*Id.*, PageID.10.) Dr. King told Plaintiff that there was more to it and he had minimized his behavior and that Plaintiff was right back "at square one" in MSOP. (*Id.*) On November 17, 2022, Plaintiff received a twelve-month continuance stating that he had minimized his behavior.

Plaintiff asserts that Defendant Smits retaliated against him for expressing his opinions during MSOP therapy group by fabricating reports which incorporated unsubstantiated gossip. Defendant Smits also "weaponized mental health services"

and terminated Plaintiff from MSOP despite the fact that Plaintiff was consistently complying with the program requirements.  (*Id.*, PageID.11.)  Plaintiff contends that Defendant Smits intentionally terminated Plaintiff from MSOP in order to prevent him from being paroled.

Plaintiff states that Defendants' conduct violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as under state law.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.   Pending Motion to Amend

Plaintiff seeks to amend his complaint by adding a section on jurisdiction and venue and amending his statement of claims and his prayer for relief and verifying the complaint.  (ECF No. 6.)  The Court will grant Plaintiff's motion and consider his proposed amendments as part of his complaint.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility

9

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.   Defendants Athearn and MacCauley

Plaintiff states that he is suing Defendants Athearn and MacCauley because they failed to adequately supervise their subordinates or respond to Plaintiff's grievances.   Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious

liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Athearn and MacCauley encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct.  Indeed, he fails to allege any facts at all about their conduct.  His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.  Because Plaintiff's claims against Defendants Athearn and MacCauley[2] are premised on nothing more than respondeat superior liability, they fail to state a claim.

### B.     First Amendment Retaliation Claims

Plaintiff claims that Defendant Smits and Minnick retaliated against him "for expressing his opinions and thoughts during MSOP therapy group by fabricating negative reports in his file in regards to sensable [sic] responses."  (ECF No. 1, PageID.11.)  Plaintiff also claims that Defendant Minnick retaliated against him "for expressing opinions as a result of 2 minor misconducts."  (*Id.*, PageID.12.)  Further, Plaintiff claims that after notifying Defendant MacCauley about the "mistreatment

---

[2] Plaintiff's allegation that Defendant MacCauley retaliated against Plaintiff by transferring him to another facility is discussed below.

and discrimination" of Plaintiff "through the prisoner's grievance system," Defendant MacCauley retaliated against Plaintiff by transferring him to another facility. (*Id.*, PageID.13.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

#### a.    Grievances

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing at least two grievances. Because the filing of a non-frivolous

13

grievance constitutes protected activity, Plaintiff's retaliation claims that are premised upon the filing of grievances state the first element of a retaliation claim.

### b.    Expressing Opinions

Plaintiff claims that Defendants Smits and Minnick retaliated against him for expressing his opinions by terminating him from MSOP.  As an initial matter, although Plaintiff alleges that he expressed his opinions during MSOP sessions and expressed his opinions about two grievances he had previously received, Plaintiff fails to allege any facts describing what his specific "opinions" and comments consisted of. (*See, e.g.*, ECF No. 1, PageID.11–12.)  Notably, Plaintiff does not allege that these "opinions" took the form of grievances, or that he expressed an intention to pursue a civil action or to file a grievance.  *See, e.g.*, *Thaddeus-X*, 175 F.3d at 390–91 (recognizing that only speech related to a prisoner's right to access the courts or speech seeking redress of grievances amounts to protected conduct); *West v. Livesay*, No. 2:19-cv-07190, 2022 WL 17185985, at *4 (C.D. Cal. Aug. 10, 2022) (explaining that "an inmate's mere verbal criticism of a government official, without indicating an intent to sue or pursue an administrative grievance, is not protected conduct," and finding that a prisoner-plaintiff's "verbal criticism" of the defendant during "group therapy session[s] [wa]s not protected speech under the First Amendment").  Under these circumstances, Plaintiff has failed to show that he engaged in protected conduct by expressing his opinions during MSOP sessions or by expressing his opinions about two misconducts that he had previously received.  For that reason alone, Plaintiff's retaliation claims against Defendants Smits and Minnick premised upon Plaintiff expressing his opinions can be dismissed.

14

## 2. Adverse Action

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

### a. Transfer to Another Facility

Plaintiff claims that Defendant MacCauley retaliated against Plaintiff by transferring him to another facility.  (ECF No. 1, PageID.13.)

Ordinarily, transfers to the general population of another prison are not typically an adverse action.  *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases).  However, transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action.  *See Hill*, 630 F.3d at 474–75.  Here, Plaintiff alleges that he was transferred to another facility; however, Plaintiff does not allege any facts to suggest that he was transferred to administrative segregation or another prison's lock-down unit.  Plaintiff is therefore unable to show that his transfer to a new facility constituted an adverse action.  For this reason alone, Plaintiff's retaliation claim against Defendant MacCauley can be dismissed.

### b. Termination from MSOP

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's termination from MSOP would constitute an adverse action.

### 3. Retaliatory Motive

Finally, as to the third element of a retaliation claim, even assuming that Plaintiff had alleged sufficient facts to satisfy both the first and second elements for all of his retaliation claims—which, as discussed above, he has not done—Plaintiff would fail to satisfy the third element.

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Here, Plaintiff merely alleges the ultimate fact of retaliation; however, but he alleges no *facts* from which to reasonably infer that Defendants were motivated by any protected conduct. With respect to Defendants Smits and Minnick, Plaintiff alleges that these Defendants wrongly stated that he was not making progress in MSOP and then wrongly terminated him from MSOP. Even assuming that Plaintiff is correct in his assertion that Defendants' decision to terminate him was based solely on his comments and opinions expressed during MSOP sessions and his opinions about two misconducts he had previously received, such a conclusion, on its own, does not support a finding that Defendants were motivated by a desire to retaliate against him. Indeed, Plaintiff alleges no facts to suggest that Defendants Smits and Minnick acted with a retaliatory motive. Instead, Plaintiff alleges that these Defendants terminated him from MSOP because of their "personal/subjective feelings about Plaintiff," including their belief that Plaintiff was minimizing his behavior and that Plaintiff had engaged in certain actions which were inconsistent with the goals of MSOP. (ECF No. 1, PageID.4–9.) It is clear that Plaintiff disagrees

16

with Defendants Smits's and Minnick's reasons for his termination from MSOP; however, disagreement, on its own, does not show retaliatory motive.

Moreover, although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance (or engaging in other protected conduct) and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he engaged in protected conduct—i.e., expressing his opinions and filing grievances—before Defendants Smits, Minnick, and MacCauley took the allegedly adverse actions against Plaintiff— suggesting temporal proximity—nothing in the complaint suggests that these Defendants took the adverse actions because of the protected conduct.  Instead, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no *facts* from which to reasonably infer that Defendants were motivated by any protected

conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). Moreover, with respect to Defendants Smits and Minnick, Plaintiff alleges no facts to suggest that they were aware that he had filed any grievances before he was terminated from MSOP.

In sum, Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, for all of the reasons set forth above, Plaintiff fails to state a First Amendment retaliation claim against Defendants Smits, Minnick, and MacCauley.

### C. Equal Protection Claims

Plaintiff claims that his termination from MSOP violated his Fourteenth Amendment equal protection rights. Specifically, alleges that "other MSOP group members [had] inform[ed] him they ha[d] received multiple misconducts and even w[]ere sent to segregation while in MSOP and w[]ere not terminated." (ECF No. 1, PageID.6.) Plaintiff also alleges that he "was informed and was given paperwork

18

from 2 white MSOP participants that . . . they were given 'Behavior Contracts' . . . and the behavior contract was notice advising those misbehaving participants that continued non[-]compliance would lead to termination." (*Id.*; *see* ECF No. 6-1, PageID.75.) Plaintiff states that he "never received any notice for non-compliance." (ECF No. 1, PageID.6.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants.  *Id.* at 265–66.  "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

To the extent that Plaintiff intended to allege that Defendants discriminated against him on the basis of his race, as explained below, he fails to state a claim.  In this action, Plaintiff claims that two white inmates received "behavior contracts" for "objectively assaulting other prisoners, using drugs and not complying with homework completion" giving them notice that they could be terminated from MSOP, but Plaintiff states that he did not receive a "behavior contract" prior to his termination from the program.  (*Id.*; *see* ECF No. 6-1, PageID.75.)  As an initial matter, Plaintiff does not identify his race in his complaint.  And, regardless, Plaintiff fails to allege sufficient facts to show that he and the other inmates were similarly situated in all relevant respects.  For example, Plaintiff does not indicate whether the inmates who received the behavior contracts were ultimately terminated from the program.  Plaintiff also does not indicate the duration of these inmates' participation in MSOP or whether besides, failing to complete homework and assaulting other

prisoners, these inmates had other issues in their progression through the program that were similar to the progression issues that Plaintiff had (i.e., issues with minimizing behavior, etc.).   Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  In sum, Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence.  *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination).

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim.  To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011).  "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'"  *Davis*, 679 F.3d at 441 (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580,

592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)).  A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory."  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)).  "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors."  *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (citation omitted)).  "'Similarly situated' is a term of art— a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claim fails to state a claim upon which relief may be granted.  Plaintiff alleges that other inmates with misconduct tickets were allowed to continue with MSOP; however, Plaintiff fails to allege facts showing that other inmates with misconduct tickets who were allowed to continue with MSOP were actually similarly situated in all respects.  Specifically, Plaintiff alleges that he was terminated from MSOP because Defendants Smits and Minnick stated that he was "not making progress" and "continu[ing] to minimize [his] behavior."  (ECF No. 1, PageID.5.)  Plaintiff, however, fails to allege sufficient facts to show that the other MSOP participants with misconduct tickets had the same issues with their progress in MSOP.  Plaintiff therefore has failed to allege sufficient facts to show that his fellow inmates were similar in all relevant aspects and that he was treated differently from any similarly situated MSOP participants.  Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for all of the reasons set forth above, Plaintiff's equal protection claims are properly dismissed.

### D.   Due Process Claims

Plaintiff claims that his termination from MSOP violated his due process rights under the Fifth and Fourteenth Amendments.  (*See* ECF No. 1; *see also* ECF No. 6-1.)  Initially, the Court notes that the Fifth Amendment's Due Process Clause applies only to actions by the federal government.  *Haertel v. Mich. Dep't of Corr.*, No 20-1904, 2021 WL 4271908, at *3 (6th Cir. May 11, 2021).  None of the Defendants

named by Plaintiff appear to be federal government employees.  Therefore, Plaintiff's Fifth Amendment claims will be dismissed.

Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment.  *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)).

To the extent that Plaintiff asserts that his termination from MSOP affected his eligibility for parole, Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.   There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir.

2010).   Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11.  In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

### E.      Eighth Amendment Claims

Plaintiff makes a conclusory claim that Defendants violated his rights under the Eighth Amendment.  Plaintiff also claims that Defendant Minnick "verbally assau[l]ted Plaintiff."  (ECF No. 1, PageID.12.)  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey*, 832 F.2d at 954 (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff's termination from participation in MSOP is not such an extreme deprivation.

Furthermore, with respect to Plaintiff's allegation that Defendant Minnick "verbally assau[l]ted Plaintiff," Plaintiff fails to allege any facts to explain how Defendant Minnick "verbally assau[l]ted" him. (ECF No. 1, PageID.12.) Regardless, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*

Moreover, to the extent that Plaintiff claims that the termination of his participation in MSOP effected his parole eligibility, the Court notes that any sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir.2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Plaintiff was convicted and sentenced to 7 to 30 years imprisonment pursuant to MCL 750.520d, which provides for a maximum sentence of 15 years in prison, and MCL 769.12, which provides for a maximum sentence of life where the person was

27

previously convicted of three or more felonies and the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more. Plaintiff began serving his sentence less than twelve years ago on April 25, 2011. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=530994.

Accordingly, for these reasons, Plaintiff has failed to state a claim under the Eighth Amendment, and his Eighth Amendment claims will be dismissed.

### F.    State Law Claims

In Plaintiff's complaint, he references both negligence and a verbal assault, which the Court construes as an attempt to bring state law claims against Defendants.  Plaintiff also contends that Defendants violated the MDOC's policies and procedures.  (*See* ECF No. 1, PageID.9.)  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law or policy.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertions that Defendants violated state law or the MDOC's policies and procedures fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Dismissal, however, remains "purely discretionary."

28

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  __April 4, 2023_____          __/s/ Phillip J. Green_____
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge